UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BONNIE E. WHITE, | } |
| Plaintiff, | } } } |
| v. | } Case No.: 2:17-cv-00528-RDP |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | } } } } |
| Defendant. | } |

## MEMORANDUM DECISION

Plaintiff Bonnie E. White ("Plaintiff" or "White") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for supplemental security income ("SSI"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.  Proceedings Below**

On February 10, 2014, Plaintiff protectively filed an application for SSI, alleging a disability onset date of January 5, 2011. (Tr. 42, 88-89, 162-64, 176). She later amended her alleged disability onset date to the date she filed her application, February 10, 2014. (Tr. 59-60, 88). Plaintiff's initial application was denied by the Social Security Administration ("SSA") on May 30, 2014. (Tr. 88-101). After the denial, Plaintiff requested a hearing before an Administrative Law Judge (the "ALJ"). (Tr. 57-82, 110-12). That hearing was held in front of ALJ Perry Martin on February 10, 2016. (Tr. 57-82, 126-130, 149). In his decision dated April 20, 2016, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Act,

1

since February 10, 2014. (Tr. 52). The Appeals Council denied Plaintiff's request for review on February 3, 2017. (Tr. 1-7). That denial was the final decision of the Commissioner, and is therefore a proper subject for this court's appellate review.

**II.     Facts**

Plaintiff was born on December 17, 1958 and was 55 years old on the date of her alleged disability onset. (Tr. 39, 64, 89, 163, 176). She alleges disability due to migraines, bulging discs, a pinched nerve, and irritable bowel syndrome ("IBS"). (Tr. 179). Plaintiff has a GED and last worked for Spring Air Cleaners sorting and delivering clothes. (Tr. 65). She was let go from that job in September 2007 and has not worked since. (Tr. 66, 179).

Plaintiff's physician, Dr. Larry Alford with Norwood Clinic, began treating her for headaches on January 18, 2010. (Tr. 282). Plaintiff complained of headaches with photophobia, but denied nausea, vomiting, and phonophobia. (*Id.*). She described the headaches as "bitemporal" and "throbbing" and indicated they were brought on by stress. (*Id.*). She reported that her last headache had occurred the day before her meeting with Dr. Alford. (*Id.*). Plaintiff was instructed to follow up with neurology. (Tr. 283).

Almost a year later, on November 3, 2010, Plaintiff returned to the Norwood Clinic, complaining of headaches with nausea, photophobia, and phonophobia but no vomiting. (Tr. 279). She again described the headaches as "bitemporal" and "throbbing," with her last headache occurring the day of her meeting with the doctor. (*Id.*). Dr. Grinder noted a long history of migraines and that various medications had provided no relief. (*Id.*). Dr. Grinder prescribed "IM or SQ injection," Toradol, and an increased dose of Phenergan. (Tr. 280).

Plaintiff returned to the doctor in January 2011 complaining of diarrhea. (Tr. 276). She denied nausea and vomiting, but reported that her symptoms had been present for months, with

2

the pain worse with meals. (*Id.*). Plaintiff was diagnosed with IBS and anxiety disorder. (Tr. 278).

In March 2011 Plaintiff complained of abdominal pain at a visit with Dr. Alford. (Tr. 271). Dr. Alford noted that the "[p]ain is worse with meals and movement. Pain appears better with rest. Past history for abdominal pain shows history of IBS. Ineffective treatments include the following antacids. Prior diagnostic testing to date for abdominal pain includes colonoscopy." (*Id.*). Plaintiff was diagnosed with a recurrent UTI. (Tr. 273).

In January 2012, Plaintiff was seen by Dr. Alford for a six-month checkup. (Tr. 263). She complained of bitemporal headaches without nausea or vomiting. (*Id.*). Plaintiff also complained of right neck and shoulder pain she described as "dull." (*Id.*). Dr. Alford made no specific diagnosis but discussed exercises and use of hot and cold therapy and medication to treat the pain. (Tr. 265). He noted decreased range of motion in the neck and the cervical spine. (Tr. 264-65). He once again referred Plaintiff to neurology for evaluation of the headaches. (Tr. 266).

In May 2012, Plaintiff again complained of bitemporal headaches to Dr. Alford, this time with nausea, but denied vomiting, photophobia, and phonophobia. (Tr. 260). Plaintiff reported her last headache had occurred a few days prior and described the pain as throbbing and sharp. (*Id.*). On physical exam, Dr. Alford noted decreased range of motion in her neck and the cervical spine. (Tr. 261). Plaintiff was told to follow up with neurology. (Tr. 262). In November 2012, Plaintiff saw Dr. Alford again for six-month checkup and complained of bitemporal headaches with throbbing pain yet without nausea or vomiting. (Tr. 256). She reported her last headache had occurred the day before, but Dr. Alford noted that Botox therapy at the neurologist was working. (Tr. 256, 259). On physical exam, Dr. Alford noted decreased range of motion of the cervical spine. (Tr. 258).

On March 31, 2013, Plaintiff completed a Headache Questionnaire for the disability office and stated severe headaches occur "every day two-three times a day" lasting "about 2-3 hours" and precipitated by stress. (Tr. 187-88).

In May 2013, Plaintiff saw Dr. Alford again complaining of dull, sharp headaches without nausea or vomiting. (Tr. 251). She reported her last headache occurred that day. (*Id.*). Dr. Alford noted that effective treatment for the headaches included Maxalt and Botox injections, and that Plaintiff was being followed by Dr. Newton, a neurologist. (*Id.*). During the same visit, Plaintiff complained of lower back pain, "radiating to right buttock, radiating to right knee, and radiating to right foot … The pain is described as sharp and constant." (*Id.*). She claimed to have had constant pain for the previous two years that had gotten progressively worse, with pain currently at an 8/10. (*Id.*). Upon physical exam, Dr. Alford noted decreased range of motion in the neck and referred Plaintiff to physical therapy. (Tr. 253-54).

On January 27, 2014, Plaintiff saw Dr. Newton who noted that Plaintiff "failed to follow up as scheduled" after Botox treatment was given for migraines. (Tr. 294). Plaintiff told Dr. Newton that she did not want to stay on the Botox injections and that her current medication for headaches was Maxalt as needed. (*Id.*). "She says [the Maxalt] works good, but still has about six headaches per month." (*Id.*). Dr. Newton prescribed Topamax in addition to Maxalt to treat the migraines. (*Id.*). Dr. Newton wanted to see Plaintiff back in one month to find an effective dose of Topamax. (*Id.*).

In February 2014, Plaintiff saw Dr. Smith at Adamsville Family Medicine to establish care as a new patient and for recheck of chronic conditions. (Tr. 297). She reported suffering from migraines, anxiety and depression, back and chest pain, and irritable bowel. (*Id.*). Dr. Smith

described her current conditions as generally stable except for the back and chest pain. (*Id.*). Upon examination of Plaintiff's joints and neck, Dr. Smith noted no abnormalities. (Tr. 298).

Sometime after February 2014, Plaintiff completed a disability report appeal form and stated that since her last report on February 26, 2014, "all of my conditions are worse." (Tr. 219). She noted that she has "trouble walking due to back pain. I have to alternate sitting and standing. I get migraines everyday." (*Id.*). She also noted that "I do not socialize often. I get migraines almost everyday and I have to stay in the bedroom in the dark, I take several naps during the day." (Tr. 221). Plaintiff referenced medical records from Dr. West Newton at St. Vincent's. (Tr. 220-21).

Plaintiff saw Dr. Parish with the Disability Office on April 28, 2014 and reported lower back pain radiating to her leg and foot. (Tr. 322). Dr. Parish found that Plaintiff could walk half a mile and climb half a flight of stairs. (*Id.*). Plaintiff reported being able to take care of her personal needs, cook, wash dishes, lift pots and pans, vacuum, sweep, mop, do yard work, use a push mower, and buy groceries. (Tr. 323). Dr. Parish found this physical activity was average, that Plaintiff could walk without assistance, lift, carry, handle objects, and sit comfortably. (*Id.*). Plaintiff's neck examination was unremarkable and her gait and station were described as normal. (Tr. 324). Plaintiff's cervical spine examination was normal but her dorsolumbar spine had some diminished flexion and extension. (Tr. 326-27). No scoliosis was found in Plaintiff's back, but there was some midline tenderness in the L-spine and S-spine. (Tr. 328). Dr. Parish diagnosed Plaintiff with chronic lower back pain including probable degenerative joint disease, history of bulging disc, right sacroiliac dysfunction, and bilateral paravertebral lumbar fibromyalgia. (*Id.*). On May 28, 2014, an image of Plaintiff's lumbar spine revealed "mild scoliosis." (Tr. 330).

Plaintiff was thereafter referred to neurologist Dr. Jane Pearson. (Tr. 331). During her visit with Dr. Pearson on March 17, 2015, Plaintiff reported having "a headache all the time for the past 10 or 12 years" and having had depression "for 10 or 12 years." (*Id.*). She reported that the Maxalt helped her headaches, but that she had not been on any antidepressants. (*Id.*). Dr. Pearson took Plaintiff off Topamax and prescribed Amitriptyline. (Tr. 332). Four days later, Plaintiff called Dr. Pearson's office to report that the medicine was working great. (*Id.*). Seven days after that, Plaintiff called the office to say that headaches were worse, so the dosage of Amitriptyline was increased. (*Id.*).

Plaintiff saw Dr. Alford again in June 2015, and reported having her last headache a week before. (Tr. 333). She again denied nausea, vomiting, photophobia, and phonophobia. (*Id.*). She described the headache as "pressure," but Dr. Alford noted she was doing "much better on her current regimen" with the Amitriptyline. (*Id.*). In January 2016, Plaintiff returned to Dr. Alford's office for a six-month checkup, and reported experiencing headaches without nausea or vomiting, with the last headache occurring a week prior to the appointment. (Tr. 345). The headache pain was described as "sharp" and precipitated by stress. (*Id.*). Dr. Alford noted that Plaintiff "is totally debilitated from the headaches." (Tr. 348).

### III.     ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572. Work activity may be considered substantial even if it is part-time or if the claimant does less, gets paid less, or has less responsibility than when she worked before. 20 C.F.R. § 404.1572(a). Even if no profit is realized,

work activity may still be considered gainful so long as it is the kind of work usually done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant is engaging in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a severe medical impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then she may not claim disability. *Id.* If the impairment is not expected to result in death, the claimant must also meet the 12-month duration requirement. 20 C.F.R. § 404.1509.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, and 404.1526. If the claimant meets or equals a listed impairment and meets the duration requirement, she will be found disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

If the claimant does not meet the requirements for disability under the third step, she may still be found disabled under steps four and five of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work notwithstanding her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant is unable to perform past relevant work, then the analysis moves to the fifth and final step of the analysis.

In the fifth and final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.

20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not been engaged in substantial gainful activity since February 10, 2014, the alleged disability onset date. (Tr. 44). The ALJ found that Plaintiff has the severe impairments of migraine headaches, depression, and irritable bowel syndrome. (*Id.*). Bulging discs, a pinched nerve, neck pain, joint tenderness, hyperlipidemia, and GERD were all found to be non-severe. (Tr. 44-46).

At step three of the analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in CFR Part 404, Subpart P, Appendix 1. (Tr. 46). In his residual functional capacity finding, the ALJ found that Plaintiff could perform a full range of work at all exertional levels subject to certain non-exertional limitations. (Tr. 47-48). Based on her age, education, work experience, and residual functional capacity, the ALJ found that there were jobs existing in the national economy in significant numbers that Plaintiff could perform. (Tr. 51). Thus, Plaintiff was found not disabled. (Tr. 52).

**IV.     Plaintiff's Argument for Remand or Reversal**

In her Memorandum of Law, Plaintiff argues that the ALJ's RFC determination is flawed in its exertional and non-exertional findings. (Doc. #12 at 1, 8). The court disagrees. For the reasons detailed herein, the court finds that substantial evidence exists to support the ALJ's findings.

## V. Standard of Review

The only relevant question for this court to decide is whether the record contains substantial evidence to support the ALJ's decision, *see* 42 U.S.C.A. § 405; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 92 F.2d 129, 131 (11th Cir. 1990). Under Title 42 U.S.C. § 405(g), the Commissioner of Social Security's findings are conclusive so long as they are supported by "substantial evidence." The district court may not reconsider the facts, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must review the record in its entirety to determine whether the decision reached is reasonable and supported by the substantial evidence. *Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence is more than a mere scintilla but less than a preponderance of the evidence. *Id*. It is relevant evidence that a reasonable person would accept as adequate to support the conclusion reached. *Id*. (citing *Bloodsworth*, 703 F.2d at 1239). Even if the evidence preponderates against the Commissioner's findings, the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. *Id*. Despite the limited review of the ALJ's findings, review does not lead to an automatic affirmance. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## VI. Discussion

Plaintiff contends that the ALJ's RFC is flawed in two ways. (Doc. #12 at 1, 8). First, she contends the RFC contains no exertional limitations. (*Id.*). Second, she argues that the non-exertional limitations found do not properly account for her migraine headaches. (*Id.*).

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing

basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. In determining a claimant's RFC, the ALJ must base his findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by her impairments. 20 C.F.R. § 416.945(a)(3). The RFC represents the most an individual can do despite her limitations. *Id.* at 416.945(a). "In making the RFC determination, the ALJ must consider all the record evidence, including evidence of non-severe impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

As part of the RFC analysis, a plaintiff claiming disabling pain must satisfy the standard adopted by the Eleventh Circuit by showing "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1255 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ determines that Plaintiff has a medically determinable impairment that could reasonably be expected to produce her pain, he must then evaluate the intensity and persistence of Plaintiff's symptoms to determine if they limit her capacity to work. 20 C.F.R. § 404.1529(c)(1).

If the ALJ rejects Plaintiff's testimony regarding pain, the ALJ must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Further, if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The reasons for discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 2007). Thus, although the ALJ's

"credibility determination does not need to cite 'particular phrases or formulations,' … it cannot merely be a broad rejection which is not enough to enable the district court . . . to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

### A. Exertional Limitations

The ALJ found Plaintiff able to perform a full range of work at all exertional levels. (Tr. 47). Plaintiff argues that her "longitudinal history of back and neck problems, and carpal tunnel syndrome indicates that some physical exertional restrictions should have been placed in the RFC determination." (Doc. #12 at 11).

Contrary to Plaintiff's argument, the record contains substantial evidence which supports a finding that Plaintiff is subject to no exertional work limitations. First, Plaintiff herself all but admitted that she is not limited by bulging discs, a pinched nerve, neck pain, and joint tenderness. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (holding that the claimant bears the burden of proving a severe impairment). When testifying for the ALJ in February 2016, Plaintiff noted that the most severe physical or mental conditions preventing her from returning to work were "headaches and IBS." (Tr. 66). She later mentioned "what they call arthritis and bursitis in my joints" and that the doctor gave her "a shot to see if that would help to eliminate the pain and let that muscle start working again. So far it's working good if I don't stay out in the cold air for it. … If I'm in the cold air, it freezes up." (Tr. 73). In her opinion, this "bunchy disc" would limit her to lifting or carrying no more than 10 pounds but it would not limit her in terms of standing or walking. (Tr. 76-77). She said that she might sometimes be limited with her sitting only if she was "real, real sick with a cold virus or something." (Tr. 77).

11

Similarly, the medical evidence also fails to establish exertional limitations. The ALJ thoroughly considered whether Plaintiff's allegations of bulging discs, a pinched nerve, neck pain, and joint tenderness could be considered severe impairments and found that they could not. (Tr. 47-48). Plaintiff underwent a consultative examination in April 2014. During that exam, she claimed that she had an MRI in 2012 which revealed bulging discs. (Tr. 93, 254, 322). However, no MRI results exist in Plaintiff's records. (Tr. 93, 254, 322). During the same consultative exam, Plaintiff claimed that she experienced pain at 9/10 which radiated to the outside of her right leg down to her foot. (Tr. 322). While she did exhibit some decreased ability with lumbar flexion, extension, and right lateral flexion and rotation, Plaintiff's range of motion was found to be otherwise normal. (Tr. 326-27). The consultative examiner noted normal gait and station, normal coordination, a normal neurological examination, normal muscle tone with no atrophy, normal reflexes, normal muscle power, negative straight leg raise testing, and normal sensation throughout. (Tr. 324-28). X-rays of Plaintiff's lumbar spine showed preserved vertebral body and disc heights with no spondylosis. (Tr. 330). The films showed some scoliosis, but it was so mild that Dr. Parish did not observe any signs of curvature on his physical exam. (Tr. 328, 330). *See* 20 C.F.R. § 416.929(c)(3)(i), (c)(4) ("We will consider … any inconsistencies in the evidence and … conflicts between your statements and the rest of the evidence.").

Finally, the ALJ considered Plaintiff's daily activities. (Tr. 45). A claimant's daily activities may properly be considered by the ALJ in evaluating a claimant's symptoms, including pain. 20 C.F.R. 416.929(c)(3)(i); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). In March 2015, Plaintiff reported to her neurologist that she worked in the yard and was physically active. (Tr. 331). She reported that she could take care of her personal needs, including cooking, washing dishes, vacuuming, sweeping, mopping, using a push mower, and buying groceries. (Tr.

12

322-23). She testified that she could drive, pick up brush in the yard, take out the garbage, shop for groceries, cook, do housecleaning, cut her grass, use a weed eater, and plant bushes and flowers. (Tr. 75-76). The only factors that she claimed limited her ability to do that work was the weather, her IBS, and her migraine headaches. (Tr. 76).

Based on the foregoing, substantial evidence supports the ALJ's decision that exertional limitations do not affect Plaintiff's ability to work.[1]

### B. Non-Exertional Limitations

The ALJ also found that certain non-exertional limitations applied to Plaintiff's RFC, yet Plaintiff contends that those limitations inadequately explain her severe migraine headaches. (Doc. #12 at 13-17). She contends that the RFC does not provide for any "off task" time, which is the primary problem presented by her headaches. (*Id.* at 14). Specifically, Plaintiff testified that when she has a migraine, which is "daily," she must lie down in the bed with the lights off. (*Id.*) She will take Maxalt as prescribed, but the medication causes her to sleep for two hours. (*Id.*). This, Dr. Alford opined, completely debilitates Plaintiff. (Tr. 348). However, the ALJ found that Plaintiff's statements regarding her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 48). A "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also Mitchell v. Commissioner*, 771 F.3d 780, 782 (11th Cir. 2014) ("[C]redibility determinations are the province of the ALJ …").

---

[1] While the ALJ did not specifically refer to Plaintiff's bulging discs, pinched nerve, neck pain, and joint tenderness in the RFC, he did clearly state that he "considered all symptoms and the extent to which those symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 48). The mere diagnosis of these conditions is not sufficient to establish work-related limitations. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 690 (11th Cir. 2005).

13

While Plaintiff consistently complained of headaches while seeing Dr. Alford, the evidence concerning her use of Maxalt is inconsistent with the frequency of headaches she reports. (Tr. 49). Plaintiff alleged at the hearing that she experiences headaches "at least three times a day" lasting for "three to four hours" each. (Tr. 66, 68). However, in January 2014, she reported having only six headaches a month to her neurologist. (Tr. 294). Despite this discrepancy, no records indicate that Plaintiff visited the emergency room due to severe headache pain and apparent lack of pain or relief medication. (Tr. 49, 251-350).

The ALJ also noted that Plaintiff's records contradicted the symptoms she alleged at the hearing. (Tr. 49). Plaintiff testified at the hearing that she would experience nausea with her headaches if she had not had anything to eat or drink. (Tr. 66). She claimed she vomited at least twice a day due to the headaches. (Tr. 67-68). However, Plaintiff consistently denied nausea, vomiting, phonophobia, and photophobia, and her denials of experiencing those symptoms was as recent as January 2016. (Tr. 251, 256, 260,[2] 263, 279, 282, 333, 345).

Finally, the ALJ properly accorded little weight to Dr. Alford's characterization of Plaintiff as "totally debilitated from the headaches." (Tr. 50, 348). The ALJ noted that Dr. Alford's treatment notes had consistently characterized Plaintiff as in no more than "mild pain/distress" even while experiencing a headache. (Tr. 50, 251-66, 333-50). Of course, Dr. Alford's opinion that Plaintiff is unable to work is not a medical opinion entitled to deference. That question is emphatically reserved for the Commissioner. 20 C.F.R. § 404.127(d); *see also Romeo v. Commissioner*, 686 Fed. Appx. 731, 733 (11th Cir. 2017) (finding physician's opinion that it would be difficult for claimant to have a full-time job was an issue reserved to the Commissioner and not entitled to any weight).

---

[2] Plaintiff reported nausea to her doctor on this instance in May 2012. (Tr. 260). She did not report vomiting. (*Id.*).

Based on the foregoing, the ALJ was not clearly wrong in discrediting Plaintiff's testimony. *See Jerrell v. Commissioner*, 433 Fed. Appx. 812, 814 (11th Cir. 2011) (citing *Holt*, 921 F.2d at 1223) (holding that statements concerning the intensity, duration, and limiting effects of Plaintiff's symptoms were not entirely credible because the objective medical evidence did not confirm the severity of the alleged pain arising from the condition); *Werner v. Commissioner*, 421 Fed. Appx. 935, 939 (11th Cir. 2011) ("The question is not … whether the ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it."). The decision of the Commissioner omitting certain non-exertional limitations is supported by substantial evidence.

### VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed. A separate order in accordance with this Memorandum Decision will be entered.

**DONE** and **ORDERED** this July 12, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE